UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

   - v. -                          :    SEALED INDICTMENT

JOHN V. McNAMEE,                  :
              Defendant.    :    **12 CRIM 134**

- - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: FEB 09 2012

### COUNT ONE

(Embezzling Assets of a Labor Organization)

The Grand Jury charges:

#### BACKGROUND

1. The Stage and Picture Operators, AFL-CIO Exhibition Employees, Local Union 829 ("the Union") is headquartered at 386 Park Avenue South, New York, New York.

2. The Union is comprised of approximately 250 members who pay mandatory monthly Union dues of approximately $20. The Union dues total approximately $65,000 per year and are the Union's main source of income.

3. The Union members' work primarily involves manual labor associated with the assembly and disassembly of exhibitions at trade shows in convention centers in the greater New York metropolitan area.

4. In or about 2000, JOHN V. McNAMEE, the defendant, was elected by the members of the Union as the Union's President/Secretary-Treasurer for a three-year term. In or about



2003, 2006, and 2009, the Union re-elected McNAMEE as its President/Secretary-Treasurer and his current term expires in or about December 2012.

5. As President/Secretary-Treasurer, JOHN V. McNAMEE, the defendant, among other positions, also serves as a Union Trustee on the Boards of the Union's pension fund ("Pension Fund") and hiring hall fund ("Hiring Hall Fund").

6. The Pension Fund is responsible for administering the Union members' pension money, which money is contributed solely by the employers of Union members (the "Employers") as required under the collective bargaining agreement between the Employers and the Union ("CBA").

7. The Hiring Hall Fund is contributed to solely by the Employers as required under the CBA. The hiring hall functions as a job placement center where the Employers obtain Union members for work typically based on members' seniority in the Union.

8. JOHN V. McNAMEE, the defendant, is paid by the Union an annual salary of approximately $70,000 for serving as its President/Secretary-Treasurer. McNAMEE also is paid an annual salary of approximately $90,000 from the Hiring Hall Fund but does not receive a salary or other compensation for serving as a Trustee on the Board of the Pension Fund.

9. The Union has an Executive Board that meets on a

monthly basis at the Union office and is comprised of the Union's President/Secretary-Treasurer, Vice-President, Trustee, and Chairman. Immediately following the Executive Board monthly meeting, the Union holds its monthly membership meeting, which also is held at the Union office.

10. Union dues are deposited into the Union's operating account, which is a checking account held at Sterling National Bank (the "Operating Account"). JOHN V. McNAMEE, the defendant, and the Union Chairman are the signatories on the Operating Account.

11. Employer contributions to the Hiring Hall Fund are deposited into the Hiring Hall Fund's bank account, which is a checking account maintained at Sterling National Bank (the "Hiring Hall Account"). JOHN V. McNAMEE, the defendant, and an Employer Trustee of the Hiring Hall Fund are the signatories on the Hiring Hall Account.

12. The Employers' pension contributions on behalf of Union members are deposited into the Pension Fund's bank account, which is a checking account maintained at Sterling National Bank (the "Pension Fund Account"). JOHN V. McNAMEE, the defendant, and an Employer Trustee of the Pension Fund are the signatories on the Pension Fund Account.

### McNAMEE'S USE OF THE UNION'S CREDIT CARD ACCOUNTS FOR PERSONAL EXPENSES

13. The Union has three American Express accounts

(collectively, the "Amex Accounts"). The Amex accounts are comprised of a business platinum account (the "Platinum Account"), a Blue for Business account (the "Blue Account"), and an executive account (the "Executive Account") and were opened in or about 2000 when JOHN V. McNAMEE, the defendant, first was elected President/Secretary-Treasurer of the Union.

14. The Platinum Account, Blue Account, and Executive Account each issued an American Express corporate card in the name of the Union and JOHN V. McNAMEE, the defendant (collectively, the "Amex Cards"). The monthly statements for the Amex Accounts are mailed to the Union (collectively, the "Amex Bills").

15. At all times relevant to this Indictment, the Amex Bills were paid by checks drawn on the Operating Account and the Hiring Hall Account.

16. From in or about January 2004, up to and including in or about February 2011, JOHN V. McNAMEE, the defendant, charged more than $200,000 in personal expenses unrelated to Union (or Hiring Hall Fund or Pension Fund) business on the Amex Cards.

17. While JOHN V. McNAMEE, the defendant, reimbursed the Union for a limited number of the personal expenses he charged on the Amex Cards, such reimbursement totaled only approximately $20,000 prior to him being notified of the audit by the Department of Labor ("DOL") of the Union, as described below.

18. At all times relevant to this Indictment, among the

personal expenses that JOHN V. McNAMEE, the defendant, charged to the Amex Accounts using the Amex Cards were the following:

a. <u>Clothing, Shoes, Accessories, and Other Personal Goods</u>: McNAMEE charged a total of approximately $27,000 to the Amex Accounts for goods purchased at, among other places, Bloomingdale's, Lord & Taylor, Coach, Burberry, Talbot's, Men's Warehouse, Rainbow Cosmetics, and Sunglass Hut.

b. <u>Electronic Goods, Sporting Goods, Hardware, Games, and Other Personal Goods</u>: McNAMEE charged a total of approximately $10,000 to the Amex Accounts for goods purchased at, among other places, The Sports Authority, Best Buy, and Bose Corporation.

c. <u>Jewelry</u>: McNAMEE charged a total of approximately $8,000 to the Amex Accounts for jewelry purchased at, among other places, Zales Jewelry and Bassano Jewelers. For example, in or about October 2004, McNAMEE purchased a ladies diamond watch at Bassano Jewelers and in or about December 2009, McNAMEE purchased another ladies watch and a diamond necklace at Zales Jewelry.

d. <u>School, Tutoring, and Mortgage-Related Expenses</u>: McNAMEE charged a total of approximately $10,400 to the Amex Accounts for school-related and mortgage expenses at, among other places, a private high school attended by his children, SAT Preparation, and a mortgage refinancing company.

e.  Restaurants:  McNAMEE charged a total of approximately $85,000 to the Amex Accounts at restaurants, including charges at Wollensky's Grill, Ruth's Chris Steakhouse, Blue Water Grill, Wolfgang's Steakhouse, the Palm Restaurant, Martells, Café Isle of Capri, and Campanile.  For example, McNAMEE charged a total of approximately $5,200 at Café Isle of Capri, which is a restaurant located in New York, New York where his parents and family often dined, and each individual charge was, in general, approximately $250.

f.  Hotels, Airfare and Vacation-Related Expenses: McNAMEE charged a total of approximately $15,000 to the Amex Accounts for, inter alia, flights with Delta; hotels in Key West, and Vermont; and other expenses associated with travel and lodging.  For example, in or about March 2009, McNAMEE used the Amex Cards to pay for expenses for himself and perhaps others in Key West, Florida, including charges at Ghost Tours of Key West and Divers Direct.  As another example, in or about July 2005, McNAMEE attended a Pension Fund related conference in Hawaii and used the Amex Cards to pay for goods and expenses for himself and perhaps others, including charges at Honolua Surf, the Pearl Factory, and Crazy Shirts.

g.  Personal Events:  McNAMEE charged a total of approximately $15,000 to the Amex Accounts for hotel rooms, catering, and other expenses associated with his 50th birthday

6

party held at the Southampton Inn located in Southampton, New York.

   h. <u>Medical, Dental, Eye Care, and Pharmaceutical Expenses</u>:  McNAMEE charged a total of approximately $37,000 to the Amex Accounts for medical, dental, eye care, and pharmaceutical-related expenses for himself and his family, including charges at doctor, dentist, orthodontist, and pediatrician offices, Duane Reade, and Cohen's Fashion Optical.

   i. <u>Alcohol and Groceries</u>:  McNAMEE charged a total of approximately $6,500 to the Amex Accounts for alcohol and groceries purchased at, among other places, the Wine Shop and Costco.

  19. At all times relevant to this Indictment, in order to pay the Amex Bills and other Union and Hiring Hall Fund expenses, including the salaries paid to JOHN V. McNAMEE, the defendant, checks were drawn on the Pension Fund Account made payable to the Hiring Hall Account in the total amount of approximately $500,000.

  20. The co-signer on the Operating Account from in or about 2008 to the present reviewed the Amex Bills and noticed charges that appeared to be of a personal nature.  When the co-signer asked JOHN V. McNAMEE, the defendant, about such charges, McNAMEE said he would "take care of" the charges and the co-signer made no further or follow-up inquiries.  The individual who co-

signed the checks for the Operating Account prior to in or about 2008, is deceased.

21. The co-signer on the Hiring Hall Account from in or about 2000 to the present did not review the Amex Bills but signed checks drawn on the Hiring Hall Account to pay the Amex Bills without questioning the amounts owed.

## THE UNION'S ANNUAL FINANCIAL REPORTS

22. The DOL requires unions to file with it on an annual basis a Form LM-2 or LM-3 (depending on the amount of the Union's receipts) Labor-Organization Annual Report, (collectively the "LM Report"), which essentially is a financial disclosure form. As part of the LM Report, the filing union is required to disclose, among other things, any allowances or other disbursements to any Union officer.

23. For the Union's LM Reports for calendar years 2004 through 2010, none of the personal expenses charged by JOHN V. McNAMEE, the defendant, to the Amex Accounts as described above is disclosed as an allowance or other disbursement to McNAMEE.

24. The Union's LM Reports for calendar years 2004 through 2010 were filed by the Union with the DOL in or about March of the following corresponding year and were signed under penalty of perjury by JOHN V. McNAMEE, the defendant, as President and as Treasurer of the Union. No other signatures were required as the LM Report requires only two signatures, the signature of

the Union's President and Treasurer, and McNAMEE held both positions for each calendar year.

### DOL AUDIT OF THE UNION

25. In or about March 2010, DOL conducted an audit of the Union for calendar year 2009. During the audit, DOL asked to review, among other things, any credit card statements. In response, the Union gave DOL several months of Amex Bills and informed DOL that JOHN V. McNAMEE, the defendant, had charged approximately $10,000 of personal expenses to the Amex Accounts.

26. Ultimately, DOL requested and received the Amex Bills going back to 2007 and the Union's then accountant informed DOL that JOHN V. McNAMEE, the defendant, had reviewed the Amex Bills and circled any charges that were personal. The total amount of the charges that the accountant represented McNAMEE had identified as personal on the Amex Bills was approximately $93,000 and included many of the charges described above.

27. After the DOL audit, JOHN V. McNAMEE, the defendant, made approximately $80,000 in payments to the Union purportedly as reimbursement for his personal charges to the Amex Accounts.

28. In or about January 2011 and again in or about September 2011, JOHN V. McNAMEE, the defendant, stated at the Union's monthly general membership meeting that, in sum and substance, the Union had paid certain of his personal expenses; he

had not reimbursed the Union for his personal expenses in a timely manner; and he now had reimbursed the Union the full amount of the personal expenses that the Union had paid on his behalf.

## STATUTORY ALLEGATIONS

29. From in or about January 2004, up to and including in or about February 2011, in the Southern District of New York and elsewhere, JOHN V. McNAMEE, the defendant, willfully and knowingly, did embezzle, and steal, and unlawfully abstract and convert to his own use, and the use of others, moneys, funds, securities, property, and assets of a labor organization of which he was an officer and by which he was employed, directly or indirectly, to wit, McNAMEE used his position as President/Secretary-Treasurer of the Union to embezzle Union funds for his personal use.

(Title 29, United States Code, Section 501(c).)

## COUNT TWO

(Falsification of Annual Reports Filed by a Labor Organization)

The Grand Jury further charges:

30. The allegations contained in paragraphs 1 through 28 above, are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

31. From in or about 2005, up to and including in or about 2011, in the Southern District of New York and elsewhere, JOHN V. McNAMEE, the defendant, willfully and knowingly, did make

10

false statements of material facts, knowing them to be false, and failed to disclose material facts, in documents, reports, and other information required to be filed by the Union with the Secretary of Labor pursuant to Section 431 of Title 29, United States Code, that is, the LM Reports, to wit, McNAMEE failed to disclose as an allowance or other disbursement to him the Union's payment of his personal expenses.

(Title 29, United States Code, Section 439(b).)

## FORFEITURE ALLEGATION

32. As a result of committing the offenses alleged in Counts One and Two of this Indictment, JOHN V. McNAMEE, the defendant, shall forfeit to the United States pursuant to 18 U.S.C. § 982, any property constituting or derived from proceeds obtained directly or indirectly as a result of the offenses.

### Substitute Asset Provision

33. If any of the above-described forfeitable property, as a result of any act or omission of JOHN V. McNAMEE, the defendant:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982.)


_____        _____
FOREPERSON                              PREET BHARARA
                                        United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JOHN McNAMEE,

Defendant.

INDICTMENT

12 Cr.

(29 U.S.C. §§ 501(c), 439(b).)

PREET BHARARA
United States Attorney.

A TRUE BILL

2/9/12
Foreperson.

2/9/12  Filed Instrum